# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The property known as:<br>4501 Toby Lane<br>Metairie, LA 70003 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  24-mc-2910

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Louisiana _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession |
| 18 U.S.C. § 2252(a)(2) | Receipt and Distribution of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Brian Villaflor
*Applicant's signature*

_____
Special Agent Brian Villaflor, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ December 19, 2024 _____

_____
*Judge's signature*

City and state: _____ New Orleans, Louisiana _____

Honorable Janis van Meerveld, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PLACE AND ITEMS TO BE SEARCHED**

The places and items to be searched are the residence located at 4501 Toby Lane, Metairie, Louisiana, and any computers, computer equipment, and/or any other electronic media located therein.

4501 Toby Lane, Metairie, Louisiana, depicted below, is described as a two-story, single-family house with brick siding and white trim, and a gray shingle roof.

 

## ATTACHMENT B

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items evidencing violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession), 2252(a)(2) (receipt and distribution of child pornography), and 2252(a)(4)(B) (possession of child pornography).

### *Firearms*

1.      Firearm, Model 922 H&R Arms Co.

2.      All firearms located in the **PREMISES** as described in Attachment A.

### *Computers and Electronic Media*

3.      The authorization includes the search of electronic data to include deleted data, remnant data and slack space.  The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.

4.      Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data.  Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives, secure digital (sd) cards, and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers,

programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

5.      Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

6.      Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

7.      Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records. Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

8.      Any computer or electronic records, documents, and materials referencing relating to the above-described offenses. Such records, documents, or materials, as well as their drafts or

modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

9.    Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system.  The form that such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

10.    Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and Internet Service Providers.  Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related

equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, USB drives, secure digital (sd) cards, or other memory storage devices.

### *Documents, Computer, and Internet Records*

11.     Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

12.     Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

13.     Records of address or identifying information for the target(s) of the investigation, and any personal or business contacts or associates of his or hers, (however and wherever written, stored, or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

14.     Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

15.     Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media (evidence of attribution).

### *Materials Relating to Child Erotica and Depictions of Minors*

16.     Any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors.

17.    Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

18.    Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

19.    Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, notes, and sexual aids.

### ***Photographs of Search***

20.    During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **IN THE MATTER OF THE** | * | |
| **APPLICATION FOR A SEARCH** | | **MISC. NO.  24-mc-2910** |
| **WARRANT FOR:** | * | |
| | | |
| **THE PROPERTY KNOWN AS:** | * | |
| **4501 Toby Lane** | | |
| **Metairie, LA 70003** | * | |
| | | |
| | * | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Villaflor, hereafter referred to as your affiant, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent (SA) with U.S. Immigration and Customs Enforcement, Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge (SAC) New Orleans, Louisiana. I have been employed as a SA with HSI since March of 2022. I subsequently attended the Criminal Investigator Training Program (CITP) and Homeland Security Investigation Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) where I was trained to conduct investigations regarding the violation of federal statutes. Prior to my employment with HSI New Orleans as a SA, I was a SA with the United States Secret Service ("USSS"). During my career with the USSS, I was assigned to a Cyber Fraud Task Force, I have led, conducted, and participated in criminal investigations involving bank fraud, wire fraud, identity theft, and access device fraud. As such, I am authorized to investigate violations of laws of the United States and execute warrants issued under the authority of the United States.  I am currently assigned to the SAC New Orleans Cyber Crimes Group. This group investigates matters

involving the online exploitation of children, particularly in relation to Title 18, United States Code, Section 2252, which criminalize the possession, receipt, and transmission of child pornography. During my assignment with the Cyber Crimes Group, I have led, conducted, and participated in the investigations and execution of search warrants for computers, electronic media, and other evidence, in cases involving child pornography and the sexual exploitation of children.

2.      I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and to make arrests for Title 18 offenses enumerated in Title 18, United States Code, Section 2516.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      I am investigating the **PREMISES** of 4501 Toby Lane, Metairie, LA 70003, and throughout the course of your affiant's investigation, it was discovered, Robert MARSH JR, resides at the **PREMISES**. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession), 2252(a)(2) (receipt and distribution of child pornography), and 2252(a)(4)(B) (possession of child pornography), have been committed by MARSH JR at the **PREMISES**. Accordingly, I am submitting this application and affidavit in support of a search warrant authorizing a search of the **PREMISES**, as further described in *Attachment A*, and any other electronic media located during the execution of the search warrant.  Located within the premises and items to be searched, I seek to seize evidence, fruits, and instrumentalities relating to violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession) and 2252 (distributing, receiving, and possessing child pornography), as more fully described in *Attachment B*.

## DETAILS OF THE INVESTIGATION

5.      On or about December 16, 2024, the Jefferson Parish Sheriff's (JPSO) initiated an investigation into Child Sexual Abuse Material (CSAM) allegedly possessed by Robert MARSH JR in or around Metairie, LA.

6.      A Detective with the JPSO Special Victims Section received information from MARSH JR's relatives, hereinafter referred to as "W1" and "W2." The following is a summary of the interviews of W1, W2, and the JPSO Detective.

7.      On or about December 16, 2024, W1 met with JPSO at their Criminal Investigations Bureau located in Harvey, LA. W1 turned over a "HP Envy TouchSmart m7 Notebook PC" laptop computer bearing serial number, 5CG3213VHS, (hereinafter the TARGET DEVICE) to the JPSO Detective that he/she suspects to have child pornography on it. W1 advised the JPSO Detective, the TARGET DEVICE belongs to his/her brother MARSH JR, and he/she retrieved it from his residence, the **PREMISES**, located at 4501 Toby Lane, Metairie, LA 70003.

8.      W1 advised the JPSO Detective, MARSH JR last had possession of the TARGET DEVICE. W1 stated to the JPSO Detective, MARSH JR was previously in prison for child pornography. W1 advised the JPSO Detective he/she took possession of the TARGET DEVICE to get "pictures off" the TARGET DEVICE and to look at his/her mother's homeowner's insurance because MARSH JR is in charge of paying the bills. MARSH JR called W1 and asked him/her if he/she was at his house and he was "very possessive of the computer."

9.      W1 advised the JPSO Detective no one else had access to the TARGET DEVICE. W1's father passed away on or about August 18, 2018, and his/her mother is "elderly" and has not used a computer in a few years. MARSH JR currently lives at the **PREMISES**, which the primary owner listed, is his father according to an open-source search of Jefferson Parish property records.

3

10.     On the same date, W2 met with JPSO at their Criminal Investigations Bureau located in Harvey, LA. W2 advised the JPSO Detective MARSH JR is a convicted felon of child pornography, and he was very "possessive" of the TARGET DEVICE at the **PREMISES**, that is why W1 took the TARGET DEVICE. W2 stated MARSH JR currently lives at the **PREMISES** with his mother, his father is deceased. W2 stated W1 gained access to the TARGET DEVICE. Upon access to the TARGET DEVICE, W2 advised the JPSO Detective they observed child pornography on the TARGET DEVICE. W2 described the child pornography described in summary below:

- Pornography with an "underage girl" (8-, 9-, or 10-year-old girl) with an adult, the adult was masturbating on the child.

11.     W2 reached out to MARSH JR via phone and brought the child pornography to MARSH JR's attention. W2 stated that MARSH JR "did not deny it" and started to give W2 a lot of "pity" and that MARSH JR's life has "spiraled out of control" ever since he lost his kids. W2 heard a lot of "guilt" in MARSH JR's voice. W2 believes the TARGET DEVICE will speak volumes.

12.     On or about December 17, 2024, your affiant met with the JPSO Detective, at the Criminal Investigations Bureau located at 725 Maple Avenue, Harvey, LA 70058. Your affiant was informed of a CSAM investigation involving the TARGET DEVICE.

13.     The JPSO Detective turned over custody of the TARGET DEVICE to your affiant for further investigation. Your affiant signed a JPSO chain of custody form for the TARGET DEVICE. The TARGET DEVICE was subsequently entered into HSI New Orleans evidence located at 1250 Poydras Street, STE 2300, New Orleans, LA 70113, where it has remained securely stored.

## SEX OFFENDER REGISTRY AND PRIOR CONVICTION

14.     According to Jefferson Parish Sheriff's Office records, Robert MARSH JR (DOB xx/xx/1965) was convicted of Pornography Involving Juveniles in violation of Louisiana Revised Statute 14:81.1 on or about March 20, 2014.

15.     Your affiant conducted a check of a public state database for sex offenders, which revealed Robert MARSH JR with a listed address of the **PREMISES**, 4501 Toby Lane, Metairie, LA 70003. MARSH JR's state offenses are listed as: Louisiana Revised Statue 14:81.1 - Pornography Involving Juveniles. MARSH JR's "Last Verification Date" is listed as September 19, 2024. Per the Sex Offender Registry public state database, MARSH JR's "level" is a "Tier 2," in which Tier 2 offenses have a 25-year registration period conducted semi-annually. MARSH JR's date convicted is listed as March 20, 2014, and a release date of March 18, 2019.

## STATE PROBATION AND PAROLE SEARCH OF THE PREMISES

16.     On December 19, 2024, Louisiana State Probation and Parole officers conducted a search of the **PREMISES** based on the terms of MARSH JR's state supervised release. Officers encountered MARSH JR at the **PREMISES** upon the search. The search revealed the following.

17.     Louisiana State Probation and Parole officers discovered a firearm, a Model 922 H&R Arms Co.  located within the **PREMISES** in an unlocked safe. According to Probation and Parole officers, MARSH JR is a prohibited person from owning a firearm due to his felony conviction. A picture was provided by officers, of the firearms serial number, is depicted below for the court:



18.     State Probation and Parole officers also located within the **PREMISES** multiple electronic devices, and at least one of those devices, contains adult pornography.

19.     On December 19, 2024, HSI New Orleans Special Agents conducted a post-*Miranda* interview of MARSH JR. MARSH JR provided the following statements to Special Agents in summary:

    a.    MARSH JR was convicted of Child Pornography in or around 2014.

    b.    MARSH JR advised his HP Laptop, the TARGET DEVICE, was taken from the **PREMISES** by his relative (W1).

    c.    MARSH JR stated the TARGET DEVICE was within the **PREMISES** and that he paid "bills" on the TARGET DEVICE.

    d.    MARSH JR stated to Special Agents there is probably child pornography on the TARGET DEVICE that was taken from the **PREMISES**.

20.     The **PREMISES** is described as a two-story, single-family house with brick siding and white trim, and a gray shingle roof. The **PREMISES** is currently secured by law enforcement.

21.     Based on this information, your affiant believes the **PREMISES** contains evidence of violations of Title 18, United States Code, Sections 922(g)(1), 2252(a)(2), and 2252(a)(4)(B).

## CHARACTERISTICS COMMON TO INDIVIDUALS
## WHO HAVE A SEXUAL INTEREST IN CHILDREN OR WHO
## PRODUCE, RECEIVE, AND/OR POSSESS CHILD PORNOGRAPHY

22.     Based on your affiant's knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals who have a sexual interest in children produce, receive, or possess images of child pornography:

   a.  Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

   b.  Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.  Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location.  Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

d.  Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area.  These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly.  Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e.  Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools.  Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012) (Posner, J.) (collecting cases, e.g., *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010)).

      f.   Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain contact information (e.g., online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

      g.   Such individuals prefer not to be without their child pornography for any prolonged period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

23.    Based upon the conduct of individuals involved in the collection of child pornography set forth above, namely, that they tend to maintain their collections at a secure, private location for long periods of time, there is probable cause to believe that evidence of the offenses of receiving and possessing child pornography is currently located at the **PREMISES** described previously herein and the computers and computer media located therein.

24.    Occupants of residences tend to keep and maintain various records and documents, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence.  Your affiant seeks authorization to search for such indicia of ownership, which would tend to provide proof of control over other items of evidentiary value found in the search.

## SEARCH AND SEIZURE OF COMPUTERS AND ELECTRONIC MEDIA

25.    Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a.    Electronic storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, usb "thumb" drives, secure digital (sd) cards, and others) can store the equivalent of thousands of pages of information.  Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.  This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search.  This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.    Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by

malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

26.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

27.    Furthermore, when there is probable cause to believe that the computer and its storage devices are instrumentalities of crimes, within the meaning of Title 18, United States Code, Sections 2251 through 2256, they should all be seized as such.

## CONCLUSION

28.    Based on the above information, your affiant respectfully submits that there is probable cause to believe that evidence of criminal offenses, namely, violations of Title 18, United States Code, Sections 922(g)(1), 2252(a)(2), and 2252(a)(4)(B), is located in the **PREMISES**, and on electronic media, as described above, and this evidence, more fully described in *Attachment B* to this affidavit, which is incorporated herein by reference, is also contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

29.    Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search of the **PREMISES**, as further described in *Attachment A,* and any firearms, computers, computer equipment, and/or any other electronic media located therein, and the seizure

of evidence, fruits, and instrumentalities of criminal violations relating to the possession of firearms by convicted felons, and receipt, distribution, and possession of child pornography, as more particularly described in *Attachment B*.

Respectfully submitted,

*/s/ Brian Villaflor*
Brian Villaflor
Special Agent
Homeland Security Investigations

Pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), the undersigned judicial officer has on this date considered the information communicated by reliable electronic means in considering whether a complaint, warrant, or summons will issue. In doing so, I have placed the affiant under oath, and the affiant has confirmed that the signatures on the complaint, warrant, or summons and affidavit are those of the affiant, that the document received by me is a correct and complete copy of the document submitted by the affiant, and that the information contained in the complaint, warrant, or summons and affidavit is true and correct to the best of the affiant's knowledge.

Subscribed and sworn to before me on
this 19th day of December, 2024
in New Orleans, Louisiana.

HONORABLE JANIS VAN MEERVELD
UNITED STATES MAGISTRATE JUDGE

12

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The property known as:<br>4501 Toby Lane<br>Metairie, LA 70003 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   24-mc-2910

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Louisiana _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ January 2, 2025 _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Duty Magistrate _____ .

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     December 19, 2024;  3:00 p.m.

*Janis van Meerveld*

*Judge's signature*

City and state:     New Orleans, Louisiana

Honorable Janis van Meerveld, U.S. Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  24-mc-2910 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

Subscribed, sworn to, and returned
before me this ____ day of _____, 20___.

_____
U.S. Judge or Magistrate

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**PLACE AND ITEMS TO BE SEARCHED**

The places and items to be searched are the residence located at 4501 Toby Lane, Metairie, Louisiana, and any computers, computer equipment, and/or any other electronic media located therein.

4501 Toby Lane, Metairie, Louisiana, depicted below, is described as a two-story, single-family house with brick siding and white trim, and a gray shingle roof.

 

## ATTACHMENT B

## LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items evidencing violations of Title 18, United States Code, Sections 922(g)(1) (felon in possession), 2252(a)(2) (receipt and distribution of child pornography), and 2252(a)(4)(B) (possession of child pornography).

### *Firearms*

1.      Firearm, Model 922 H&R Arms Co.

2.      All firearms located in the **PREMISES** as described in Attachment A.

### *Computers and Electronic Media*

3.      The authorization includes the search of electronic data to include deleted data, remnant data and slack space.  The seizure and search of computers and computer media will be conducted in accordance with the affidavit submitted in support of this warrant.

4.      Computer and electronic hardware, meaning any and all computer equipment, including any electronic devices that are capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses or data.  Included within the definition of computer and electronic hardware is any data processing hardware (such as central processing units and self-contained laptop or notebook computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives, secure digital (sd) cards, and diskettes, tape drives and tapes, optical and compact disk storage devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); digital cameras; related communications devices (such as modems, cables and connections, recording equipment, RAM and ROM units, acoustic couplers, automatic dialers, speed dialers,

programmable telephone dialing or signaling devices, and electronic tone generating devices); and any devices, mechanisms, or parts that can be used to restrict access to such hardware (such as physical keys and locks).

5.      Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components.  Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

6.      Computer-related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

7.      Computer passwords and data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer-related documentation, or electronic data records.  Such items include, but are not limited to, data security hardware (such as encryption devices, chips, and circuit boards); passwords; data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or data or to otherwise render programs or data into usable form.

8.      Any computer or electronic records, documents, and materials referencing relating to the above-described offenses.  Such records, documents, or materials, as well as their drafts or

modifications, may have been created or stored in various formats, including, but not limited to, any hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video tapes, motion pictures, or photocopies); any mechanical form (such as photographic records, printing, or typing); any electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact disks); or any information on any electronic or magnetic storage device (such as floppy diskettes, hard disks, CD-ROMs, optical disks, printer buffers, sort cards, memory calculators, electronic dialers, or electronic notebooks), as well as printouts or readouts from any magnetic storage device.

9.    Any electronic information or data, stored in any form, which has been used or prepared for use either for periodic or random backup (whether deliberate, inadvertent, or automatically or manually initiated), of any computer or computer system. The form that such information might take includes, but is not limited to, floppy diskettes, fixed hard disks, removable hard disk cartridges, tapes, laser disks, CD-ROM disks, video cassettes, and other media capable of storing magnetic or optical coding.

10.    Any electronic storage device capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and using electronic data used to conduct computer or Internet-based communications, or which contains material or data obtained through computer or Internet-based communications, including data in the form of electronic records, documents, and materials, including those used to facilitate interstate communications, including but not limited to telephone (including mobile telephone) and Internet Service Providers. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer- related

equipment, such as fixed disks, external hard disks, removable hard disk cartridges, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, laser disks, USB drives, secure digital (sd) cards, or other memory storage devices.

### *Documents, Computer, and Internet Records*

11.    Records of personal and business activities relating to the operation and ownership of the computer systems, such as telephone records, notes (however and wherever written, stored, or maintained), books, notes, and reference materials.

12.    Any records or documents pertaining to accounts held with Internet Service Providers or of Internet use.

13.    Records of address or identifying information for the target(s) of the investigation, and any personal or business contacts or associates of his or hers, (however and wherever written, stored, or maintained), including contact lists, buddy lists, email lists, ICQ addresses, IRC names (a.k.a., "Nics"), user IDs, eIDs (electronic ID numbers), and passwords.

14.    Documents and records, including, for example, receipts, banking records, bills, statements, telephone records, and other similar indicia of ownership indicating occupation, possession, or control over the residence and/or possession of the searched items located therein.

15.    Computer records and evidence identifying who the particular user was who distributed, transmitted, downloaded or possessed any child pornography found on any computer or computer media (evidence of attribution).

### *Materials Relating to Child Erotica and Depictions of Minors*

16.    Any and all visual depictions of minors, including, but not limited to, sexually explicit images of minors.

17.     Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

18.     Any and all notebooks and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2).

19.     Any and all child erotica, including photographs of children that are not sexually explicit, drawings, sketches, fantasy writings, notes, and sexual aids.

### ***Photographs of Search***

20.     During the course of the search, photographs of the searched premises may also be taken to record the condition thereof and/or the location of items therein.